# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| Maureen McNeil, | ) |
|     Plaintiff, | ) |
| v. | ) Case No. 2-10-cv-04154-NKL |
| Missouri Annual Conference of The United Methodist Church, Heartland South District, United Methodist Church, Robert Schnase, and Sally Haynes | ) |
|     Defendants. | |

## ORDER

Before the Court is the Motion to Dismiss [Doc. # 2] filed by Defendant Missouri Annual Conference of The United Methodist Church ("Conference") and Heartland South District, United Methodist Church ("District"). For the following reasons, the Court GRANTS the motion and dismisses Plaintiff Maureen McNeil's claims with prejudice.

**I.    Background**

Pro se Plaintiff McNeil's Complaint alleged only the following "facts":

6. Respondents discriminated against Petitioner because of a history of disability resulting in a negative attitude toward the Petitioner and treatment of the Petitioner consistent with the Petitioner having a substantially limiting impairment.

7. Respondents retaliated against Petitioner.

[Doc. # 1, Ex. A]

In her opposition to the Defendant's Motion to Dismiss she made the following additional allegations:

> 6. Defendant discriminated against Plaintiff because of a history of disability resulting in a negative attitude toward the Plaintiff causing treatment of the Plaintiff consistent with the Plaintiff having a substantially limiting impairment. These disabilities include, but are not limited to diabetes, episodic cellulitis, surgeries, and treatments for which Plaintiff can and will produce medical records. . . .
>
> 7. Defendants retaliated against Plaintiff. This retaliation is not under the ADA, but is instead retaliation, plain and simple. It is clear in the three letters received from the Heartland South District, United Methodists Church and dated: September 15, 2009; October 5, 2009; and November 5, 2009. According to the Book of Discipline of the United Methodist Church, the District does not have the authority to discontinue the Plaintiff's license. They can only recommend discontinuation.

[Doc. # 6 at 1 (citations omitted).] She further explained the following in an attachment to Plaintiff's Brief in Opposition [Doc. # 6, Ex. B]. In 2004 Plaintiff McNeil(1) was a seminary student at Saint Paul School of Theology in Kansas City, Missouri, (2) served two churches 100 miles north of Kansas City, and (3) worked in the Cokesbury Bookstore on campus – owned by the United Methodist Publishing House, which is not listed as a defendant. [Doc. # 6, Ex. B at 1-2.] In July 2004, Plaintiff's doctor informed her that she "needed to give something up," because she "was morbidly obese and diabetic." [Doc. # 6, Ex. B at 1.] For economic reasons, Plaintiff decided to "give up the churches and concentrate on supervising the bookstore and my studies" at the United Methodist seminary. In November 2003, Plaintiff underwent bilateral mastectomies to prevent breast cancer, and in January 2004 she

was hospitalized for "an infection (cellulitis) in the left incision." [Doc. # 6, Ex. B at 2.] Plaintiff had another episode of cellulitis in 2005. *Id.*

Plaintiff also alleges that District Superintendent Rev. T. Cody Collier told her in February 2006 that she would not receive a church appointment "because of my health." [Doc. # 6, Ex. B at 2.] Plaintiff further alleges that she was told in June 2006 by former District Superintendent Ronald Graham, "I can see why no one wants to take you on, Maureen, you're going to cost the Conference too much in health care on down the road." [Doc. # 6, Ex. B at 3.]

According to her narrative in Exhibit B:

From June 30, 2006 on, my physical health steadily declined. I had cellulitis over my entire upper torso, front and back, seven more times for which I was hospitalized. I also had a severe case of cellulitis in my left leg, also for which I was hospitalized. I could not have worked after the hospitalization for my leg, but the doctors would have let me return to work right after the other hospitalizations, if I'd had a job. Besides the leg episode, no doctor ever told me I couldn't work, but I definitely was treated like I was disabled by the UMC.

[Doc. # 6, Ex. B at 3.] According to Plaintiff, "I was unable to finish school in 2006 and was forced to leave a job I loved and was successful at on June 30, 2006." *Id.* However, "[s]ince the gastric bypass," which took place on December 10, 2007, Plaintiff has "lost another 105 pounds, my diabetes went into remission almost immediately, my blood pressure medication was greatly reduced, and my health in general is vastly improved." [Doc. # 6, Ex. B at 2.]

In a November 5, 2009 letter to Plaintiff McNeil, United Methodist Senior Pastor Sally Haynes outlined the process for "readmission as a candidate for ministry," calling

3

Plaintiff's attention to, inter alia, "the additional Disciplinary requirements . . . such as notarized statements and a satisfactory certificate of good health." [Doc. # 6, Ex. A at 3.] Then, in a letter dated September 15, 2009, Haynes addressed Plaintiff's "future service to the United Methodist Church through the path of ordained ministry." [Doc. # 6, Ex. A at 1.] Haynes informed Plaintiff that the District Committee on Ordained Ministry was "unable to move the process forward. That process has taken many years, dating as far back as October 1993 . . . indicat[ing] your struggle in completing it." *Id.* The letter concludes: "Given that your formal education is completed, and that we have not seen improvement in theological work over the course of these years, we were unable to anticipate the possibility of improvement." *Id.*

## II. Discussion

### A. Standard for Motion to Dismiss

Plaintiff McNeil is proceeding pro se in this case. The Court should liberally construe the pleadings of a pro se plaintiff. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Nonetheless, even pro se plaintiffs must comply with the fundamental requirements of the Federal Rules of Civil Procedure. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Schooley v. Kennedy*, 712 F.2d 372, 373 (8th Cir. 1983).

Here, the Court will assume the truth of the facts alleged by Plaintiff McNeil in the exhibits attached to her Brief in Opposition to the Motion to Dismiss, since they were intended to rehabilitate the bare allegations contained in the Complaint. Even assuming

4

those facts to be true, however, the Court must still hold Plaintiff's pleadings to the standard under Rules 12(b)(6) and 8(a)(2).

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must present "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of a short and plain statement is to provide defendants with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citation omitted). To satisfy this standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal quotations omitted). On a motion to dismiss, a court's evaluation of a plaintiff's complaint is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

### B. Plaintiff McNeil's Claims

Plaintiff's Complaint makes two claims: (i) disability discrimination, and (ii) retaliation. [Doc. # 1, Ex. A.]

#### (i) Disability Discrimination

Plaintiff McNeill's disability discrimination claim under the Americans with Disabilities Act ("ADA") fails for two reasons: (a) Plaintiff fails to allege sufficient facts to

5

raise a right to relief above the speculative level; and (b) even if Plaintiff had made out a plausible discrimination claim, there is a ministerial exception to the ADA that prevents the Court from second-guessing the hiring decisions made by religious institutions.

### (a) Plaintiff Fails to Allege Sufficient Facts

First, even assuming the truth of the facts alleged by Plaintiff in her exhibits, Plaintiff fails to allege sufficient facts to raise a right to relief above the speculative level under *Twombly* and *Iqbal*. In order to establish a prima facie disability discrimination claim, Plaintiff must prove that she:

> (1) had a disability within the meaning of the ADA; (2) was qualified, with or without a reasonable accommodation, to perform the essential job functions of the position in question; and (3) suffered an adverse employment action because of [her] disability.

*Lors v. Dean*, 595 F.3d 831, 834 (8th Cir. 2010) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)).

Plaintiff does not allege sufficient facts to establish a prima facie case that she had a disability within the meaning of the ADA. The ADA defines the term "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

Here, Plaintiff does not allege that her physical or mental condition substantially limited her in any major life activity, or that she had a record of such impairment, or that

6

Defendants regarded her as having such an impairment. Plaintiff does allege that her doctor in 2004 recommended that she "needed to give something up," because she "was morbidly obese and diabetic." [Doc. # 6, Ex. B at 1.] However, the "something" that Plaintiff needed to give up was one of her two jobs, which she had taken on in addition to her responsibilities as a full-time student. *Id.* Also, according to Plaintiff, "[b]esides the leg episode, no doctor ever told me I couldn't work . . . ." *Id.* at 3.

Plaintiff's only other allegations of medical intervention are a pair of apparently elective surgeries – a preventive mastectomy and a gastric bypass – as well as ongoing complications from the skin condition known as cellulitis. While Plaintiff undoubtedly suffered a great deal of discomfort and expense in treating these conditions, she has made no allegation that they substantially limited her in any major life activity. Furthermore, after her gastric bypass surgery on December 10, 2007, Plaintiff allegedly "lost another 105 pounds, my diabetes went into remission almost immediately, my blood pressure medication was greatly reduced, and my health in general is vastly improved." [Doc. # 6, Ex. B at 2.] Thus, Plaintiff alleges that her health vastly improved nearly two years before Sally Haynes's November 5, 2009 letter concluded that Plaintiff would not be readmitted as a candidate for the ministry because "we have not seen improvement in theological work over the course of these years . . . ." [Doc. # 6, Ex. A at 1.]

Plaintiff has not alleged facts sufficient to make plausible her claim that she had a disability within the meaning of the ADA. Hence, it is also implausible under the facts alleged that she suffered an adverse employment action because of the disability. For these

7

reasons, Plaintiff has failed to allege sufficient facts to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**(b) The Ministerial Exception**

Second, even if Plaintiff had made out a plausible discrimination claim, "the ministerial exception" prevents the Court from second-guessing the hiring decisions made by religious institutions. According to the ADA, religious institutions may give "preference in employment to individuals of a particular religion" and may "require that all applicants and employees conform to the religious tenants of such organizations." 42 U.S.C. § 12113(d).

Beyond the specific language of the ADA, a broader ministerial exception to government regulation of employment discrimination is "founded upon the principle that 'perpetuation of a church's existence may depend upon those whom it selects to preach its values, teach its message, and interpret its doctrines both to its own membership and to the world at large.'" *Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698, 704 (7th Cir. 2003) (quoting *Rayburn v. Gen'l Conf. Of Seventh-Day Adventists*, 772 F.2d 1164, 1168 (4th Cir. 1985)). The ministerial exception is "a long-established doctrine that gives great[] protection to religious autonomy" and that "is based on the establishment and free-exercise clauses of the First Amendment." *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1039-40 (7th Cir. 2006) (citations omitted).

"Although the ministerial exception is often raised in response to employment discrimination claims under Title VII of the Civil Rights Act . . . it has also been applied to

8

claims under the ADA and the Age Discrimination in Employment Act, as well as common law claims brought against a religious employer." *Hollins v. Methodist Healthcare, Inc.*, 474 F.3d 223, 225 (6th Cir. 2007) (citations omitted). *Hollins* affirmed the district court's dismissal of the plaintiff's ADA claim under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *Id.* at 224-25, 227.

In their Reply to Plaintiff's Brief in Opposition – which presented for the first time the facts regarding the nature of the employment Plaintiff sought – Defendants request that "this case be dismissed under both Fed. R. Civ. P. Rule 12(b)(1) and 12(b)(6)." [Doc. # 7 at 3.] Some courts view the ministerial exception as an issue of the legal sufficiency of the cause of action. *See Hoatson v. N.Y. Archdiocese*, 901 N.Y.S. 2d 907 (N.Y. Sup. Ct. 2009). However, most federal circuits – including the Eighth Circuit – have considered the ministerial exception as a bar to subject matter jurisdiction under Rule 12(b)(1). *See Cooper-Igwebuike v. United Methodist Church*, 160 F.App'x 549 (8th Cir. 2005); *Hollins*, 474 F.3d at 224-25; *Alicea-Hernandez*, 320 F.3d at 702-03. Therefore, the Court now considers whether it has subject matter jurisdiction to hear Plaintiff's ADA claim, considering the ministerial exception, and in light of the facts that have emerged in Plaintiff's Brief in Opposition to Defendant's original Rule 12(b)(6) Motion to Dismiss.

Two factors must be present for the ministerial exception to bar an employment discrimination claim: (1) the employer must be a religious institution, and (2) the employee must be a ministerial employee. *Hollins*, 474 F.3d at 225. Applying the *Hollins* factors here, first, Defendants Conference and District are both entities of the United Methodist Church,

9

a religious institution. Second, Plaintiff alleges that disability discrimination has prevented her appointment as an ordained minister. While it remains a somewhat close question of law whether the ministerial exception extends to all employees of a religious institution, the exception most clearly applies to the position of ordained minister. *See Tomic*, 442 F.3d at 1039 (holding that the ministerial exception applied to a church music director and organist). Therefore, the ministerial exception applies here and the Court is without subject matter jurisdiction to hear Plaintiff's ADA claim.

### (ii) Retaliation

In addition to the ADA claim of disability discrimination, Plaintiff McNeil's Complaint also alleged that "Respondents retaliated against Petitioner." [Doc. # 1, Ex. A.] In her Brief in Opposition, Plaintiff attempted to clarify the nature of this claim:

> 7. Defendants retaliated against Plaintiff. This retaliation is not under the ADA, but is instead retaliation, plain and simple. It is clear in the three letters received from the Heartland South District, United Methodists Church and dated: September 15, 2009; October 5, 2009; and November 5, 2009. According to the Book of Discipline of the United Methodist Church, the District does not have the authority to discontinue the Plaintiff's license. They can only recommend discontinuation.

[Doc. # 6 at 1 (citations omitted).] Thus, Plaintiff's retaliation claim is "not under the ADA, but is instead retaliation, plain and simple." *Id.* However, the retaliation alleged by Plaintiff is not "clear" to the Court under these facts. The only additional fact involving retaliation alleged in Plaintiff's narrative attached to her Brief in Opposition is the following: "I worry about retaliation for filing the EEOC complaint." [Doc. # 6, Ex. B at 4.] However, Plaintiff's worries about retaliation for filing a complaint against Defendants do not satisfy

10

Rule 12(b)(6). With regard to her retaliation claim, Plaintiff has failed to state a claim to relief that is plausible on its face.

For the reasons stated above, Plaintiff McNeil's disability discrimination and retaliation claims against Defendants Conference and District are dismissed with prejudice. The caption of Plaintiff's Complaint also listed "Bishop Robert Schnase, et al." and "Ms. Sally Haynes, et al." as potential defendants. [Doc. # 1, Ex. A] Defendants argue that individuals cannot be held personally liable under the ADA. [Doc. # 3 at 2 n.1.] Because this Order also applies to these claims to the extent that they are brought against Schnase, Haynes, or any other individual associated with Defendants Conference and District, the Court need not address the question of individual liability under the ADA.

## III.  Conclusion

Accordingly, it is hereby ORDERED that Defendants' Motion to Dismiss [Doc. # 2] is GRANTED.

s/ NANETTE K. LAUGHREY  
NANETTE K. LAUGHREY  
United States District Judge

Dated: September 20, 2010  
Jefferson City, Missouri